# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-3419

_____

Cheri Dahlin, Individually and on Behalf of the Estate of Dean Dahlin, Deceased

*Plaintiff - Appellee*

v.

Lyondell Chemical Company; Equistar Chemicals, LP; Equistar GP, LLC

*Defendants - Appellants*

Archer-Daniels-Midland Company

*Defendant*

_____

No. 16-4472

_____

Cheri Dahlin, Individually and on Behalf of the Estate of Dean Dahlin, Deceased

*Plaintiff - Appellant*

v.

Lyondell Chemical Company; Equistar Chemicals, LP; Equistar GP, LLC

*Defendants - Appellees*

Archer-Daniels-Midland Company

*Defendant*

_____

Appeals from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: October 18, 2017
Filed: January 26, 2018

_____

Before SMITH, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Cheri Dahlin sued Lyondell Chemical Company, Equistar Chemicals, LP, and Equistar GP, LLC (collectively "Lyondell"). A jury returned a verdict for Dahlin. Having jurisdiction under 28 U.S.C. § 1291, this court vacates and remands.

I.

Between 1990 and 1995, Dean B. Dahlin worked for two companies as a commercial truck driver. For both, he loaded his truck with benzene-containing pyrolysis gasoline at a petrochemical facility in Clinton, Iowa. He transported the gasoline to a storage facility where he unloaded it. He then returned to the Clinton facility, reloaded, and went back to the storage facility. Drivers did this four-to-six times a day during the summer.

Dean's employers did not own the Clinton facility. From 1988 until late 1993, Quantum Chemical Corporation owned it. In late 1993, Hanson, PLC acquired the Corporation, changing its name to Quantum Chemical Company. The name changed back to Quantum Chemical Corporation in 1996—until March 1997, when it became Millennium Petrochemical, Inc. Later in 1997, Millenium formed a joint venture with

Lyondell Chemical Company called Equistar Chemicals, LP. Equistar became the Clinton facility's owner. In 2004, Equistar became Lyondell Chemical Company's wholly owned subsidiary.

In 2009, Equistar and Lyondell Chemical Company, with other affiliated companies, petitioned for Chapter 11 bankruptcy. The bankruptcy court confirmed a reorganization plan in 2010, discharging all existing debts.

Dean was diagnosed in 2012 with myelodysplastic syndrome, which transformed to acute myeloid leukemia. Dean passed away from AML. His widow, Cheri Dahlin, sued Lyondell, alleging that Dean's benzene exposure at the Clinton facility caused his disease.

Lyondell moved for summary judgment, arguing that Dahlin's claim was discharged in bankruptcy. The district court denied the motion. *See Dahlin v. Archer-Daniels-Midland Co.*, 2015 WL 11675667 (S.D. Iowa Sept. 29, 2015). A jury awarded Dahlin $1.76 million in compensatory damages and $1.76 million in punitive damages. Post-trial, the district court vacated the punitive damages, but rejected Lyondell's other arguments. Lyondell appeals. Dahlin cross-appeals to reinstate the punitive damages.

II.

Lyondell says that Dahlin's claim was discharged in bankruptcy. The first question is whether this court can review this issue. Lyondell did not raise the discharge issue in a motion for judgment as a matter of law. Instead, it relies on the district court's denial of its motion for summary judgment.

"It is generally true that a denial of summary judgment is interlocutory in nature and not appealable after trial and judgment." *New York Marine & Gen. Ins. Co. v.*

***Continental Cement Co., LLC***, 761 F.3d 830, 837 (8th Cir. 2014).  "[T]he proper redress for an argument denied at summary judgment is not through appeal of that denial, 'but through subsequent motions for judgment as a matter of law and appellate review of those motions if they were denied.'"  ***Id.*** at 838, *quoting* ***White Consol. Indus., Inc. v. McGill Mfg. Co.***, 165 F.3d 1185, 1189 (8th Cir. 1999).

This court, however, has "not indiscriminately foreclose[d] all appeals taken from the denial of an issue raised at summary judgment. . . . [A] distinction [exists] between the denial of a summary judgment motion involving the merits of a claim and one involving preliminary issues, such as a statute of limitations, collateral estoppel, or standing."  ***Id.***  This court cannot review the denial of summary judgment on an issue involving the merits.  *See* ***id.***  But it can review a preliminary issue.  ***Id.***

As the district court noted, the discharge issue does not involve the merits of Dahlin's claim.  ***Dahlin***, 2015 WL 11675667, at \*1 n.1.  Like statute of limitations, collateral estoppel, and standing, a bankruptcy discharge issue "is generally preliminary to determination of the merits in a case."  *See* ***New York Marine***, 761 F.3d at 838.  This court may review whether Dahlin's claim was discharged in Lyondell's bankruptcy.

This court reviews de novo a district court's grant or denial of summary judgment, applying the same standard as the district court.  ***Rosemann v. St. Louis Bank***, 858 F.3d 488, 494 (8th Cir. 2017); ***ReliaStar Life Ins. Co. v. IOA Re, Inc.***, 303 F.3d 874, 878 (8th Cir. 2002).  Whether a bankruptcy notice satisfies due process is a mixed question of law and fact. *See* ***Stauch v. City of Columbia Heights***, 212 F.3d 425, 431 (8th Cir. 2000) ("Although, the question of whether the procedural safeguards provided for in the Code are adequate to satisfy due process is a question of law for the court to determine, whether the City indeed provided the Stauches with such procedure is a question of fact for the jury.").  "The burden of establishing that

a creditor has received appropriate notice rests with the debtor." ***In re Hairopoulos***, 118 F.3d 1240, 1244 (8th Cir. 1997).

## III.

"[T]he confirmation of a [Chapter 11 bankruptcy] plan . . . discharges the debtor from any debt that arose before the date of such confirmation." **11 U.S.C. § 1141(d)(1)(A)**. A "debt" is a "liability on a claim." **§ 101(12)**. Dahlin's lawsuit is a "claim." *See* **§ 101(5)(A)** (a "claim" includes any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured"); ***Boston & Maine Corp. v. Massachusetts Bay Transp. Auth.***, 587 F.3d 89, 100 (1st Cir. 2009) ("A contingent claim is [a] claim that has not yet accrued and is dependent on some future event that may never happen.") (citation and internal quotation marks omitted).

The district court ruled that Dahlin's claim arose before the confirmation of Lyondell's bankruptcy plan. ***Dahlin***, 2015 WL 11675667, at *8. Dahlin does not challenge that ruling, also acknowledging she did not file a proof of claim. The district court's ruling would generally mean that Dahlin's claim was discharged because "a cause of action that accrues prior to the confirmation of the plan constitutes a 'claim' dischargeable upon confirmation." ***Sanchez v. Northwest Airlines, Inc.***, 659 F.3d 671, 675 (8th Cir. 2011); *see also* **§ 1141(d)(1)(A)**. Despite that general rule, the district court concluded that Dahlin's claim was not discharged because Lyondell violated Dean's due process rights by not providing sufficient notice of its bankruptcy. ***Dahlin***, 2015 WL 11675667, at *13.

A.

"Inadequate notice is a defect which precludes discharge of a claim in bankruptcy." *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995). "The operation of the Bankruptcy Code, including its discharge provisions, is subject to due process constraints." *Sanchez*, 659 F.3d at 675. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

"[B]efore a pre-petition or pre-confirmation claim can be discharged under the applicable provisions of the Bankruptcy Code, a debtor's creditors must be afforded notice of the debtor's bankruptcy case, as well as the deadline for asserting any pre-petition claims against the debtor." *Sanchez*, 659 F.3d at 675, *quoting Zurich Am. Ins. Co. v. Tessler (In re J.A. Jones, Inc.)*, 492 F.3d 242, 249 (4th Cir. 2007). "Absent such notice, creditors lack 'the opportunity to participate in a meaningful way in the course of bankruptcy proceedings.'" *Id.*, *quoting Hairopoulos*, 118 F.3d at 1244.

The level of notice that satisfies due process depends on whether the creditor is "known" or "unknown." *See Chemetron*, 72 F.3d at 346. "Known creditors must be provided with actual written notice of a debtor's bankruptcy filing and bar claims date." *Id.* "For unknown claimants, notification by publication will generally suffice." *Id.*; *see also Tulsa Prof'l Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988) ("For creditors who are not 'reasonably ascertainable,' publication notice can suffice.").

The district court concluded that Dean was an unknown creditor entitled only to publication notice. *Dahlin*, 2015 WL 11675667, at \*11. The notice listed over 90 companies as debtors. It included the statutory definition of "claim," noting the deadlines to file a proof of claim. It described who must file a proof of claim, and where and what to file. It explained the consequences of not filing a proof of claim before the bar date. Lyondell published the notice in the national edition of *USA Today*, the national and international editions of the *Wall Street Journal*, and regional newspapers, including the *Clinton Herald*, circulated in Clinton, Iowa. *See Chemetron*, 72 F.3d at 348-49 ("Publication in national newspapers is regularly deemed sufficient notice to unknown creditors, especially where supplemented, as here, with notice in papers of general circulation in locations where the debtor is conducting business.").

The district court ruled that the content of Lyondell's notice did not satisfy due process. *Dahlin*, 2015 WL 11675667, at \*13. It emphasized that the notice did not mention Quantum Chemical Corporation, Hanson PLC, or Quantum Chemical Company—the owners of the Clinton facility when Dean worked there. *Id.* But the Federal Rules of Bankruptcy Procedure required Lyondell to list only names used within the eight years before the filing of the bankruptcy petition. *See* **Fed. R. Bankr. P. 1005 and 2002(n)**. Quantum Chemical Corporation, Hanson PLC, or Quantum Chemical Company were not used within the eight-year window. Despite that, the district court concluded:

> [C]ompliance with the bankruptcy rules was not sufficient to satisfy due process under the particular circumstances of this case. Though the bankruptcy rules are created to safeguard creditor's rights, they are not necessarily co-extensive with the protection of due process. Because Defendants here should have known of their potential liability for

> pre-1997 benzene claims, Defendants should have listed Quantum Chemical Corporation, Hanson PLC, and Quantum Chemical Company in their Notice. Their failure to do so violated Dean's due process rights.
>
> . . . .
>
> The relative uncertainty of future benzene claims, albeit uncertainty of who would bring the claims, created a duty for Defendants to provide some notice to this group of claimants.

*Dahlin*, 2015 WL 11675667, at \*12-13. The district court stressed: (1) two years before bankruptcy, Lyondell was fined $2.5 million by the EPA and agreed to invest $200,000 on environmental projects in Clinton, (2) benzene claims were 10% of Lyondell's yearly toxic-tort litigation, and (3) the EPA conducted a study documenting benzene contamination at the Clinton facility, designated it a "Superfund site," and required benzene remediation. *Id.* at \*12. The district court also said: "Had the Notice mentioned benzene or the Clinton Complex, it perhaps would have satisfied due process." *Id.* at \*13.

IV.

The notice did not need to mention benzene claims or the Clinton facility in order to satisfy due process. *See In re Placid Oil Co.*, 753 F.3d 151, 158 (5th Cir. 2014) ("We have never required bar date notices to contain information about specific potential claims."). Instead, the key issue is whether the notice should have listed the names Quantum Chemical Corporation, Hanson PLC, or Quantum Chemical Company.

Compliance with the bankruptcy rules might not satisfy due process. *See In re Flynn*, 402 B.R. 437, 445 n.11 (B.A.P. 1st Cir. 2009) ("[R]egardless of what the Bankruptcy Rules allow, they may not be used to circumvent constitutional due

process requirements. Notification procedures set forth in rules 'neither trump nor displace the constitutional requirement that . . . [the] notice [be] sufficient to satisfy the demands of due process.'") (alteration in original), *quoting **United States v. One Star Class Sloop Sailboat***, 458 F.3d 16, 22 (1st Cir. 2006). The circumstances of a case might require a debtor to provide more information than necessary under the bankruptcy rules.

The district court ruled that because Lyondell should have known of its potential liability for pre-1997 benzene claims, it should have given more notice than the bankruptcy rules require. This ruling exceeds the bounds of the process due to an unknown creditor.

An unknown creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." ***Mullane***, 339 U.S. at 317. A "known" creditor is one whose identity is either known or "reasonably ascertainable" by the debtor. ***Tulsa Prof'l***, 485 U.S. at 489-90. "A creditor's identity is 'reasonably ascertainable' if that creditor can be identified through 'reasonably diligent efforts.'" ***Chemetron***, 72 F.3d at 346, *quoting **Mennonite Bd. of Missions v. Adams***, 462 U.S. 791, 798 n.4 (1983). Reasonable diligence does not require "impracticable and extended searches . . . in the name of due process." ***Mullane***, 339 U.S. at 317-18. As the Third Circuit said:

> A debtor does not have a duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it.
>
> . . . .
>
> [W]hat is required is not a vast, open-ended investigation. The requisite search instead focuses on the debtor's own books and records. Efforts

beyond a careful examination of these documents are generally not required. Only those claimants who are identifiable through a diligent search are "reasonably ascertainable" and hence "known" creditors.

*Chemetron*, 72 F.3d at 346-47 (internal citations, quotation marks, and footnote omitted).

As the district court concluded, Lyondell conducted a reasonably diligent search for creditors. *Dahlin*, 2015 WL 11675667, at *11. It hired an experienced bankruptcy consulting firm that reviewed Lyondell's employee, vendor, accounts payable, and contract registers. That firm identified over one million reasonably ascertainable creditors. Dean was not one of them. After a reasonably diligent search for known creditors, publication notice generally suffices for unknown creditors. *See Tulsa Prof'l*, 485 U.S. at 490. Lyondell gave notice by publication.

For Lyondell's notice to satisfy due process, the district court would require Lyondell to conduct *another* search beyond a reasonably diligent search for known creditors. By the district court's rationale, the over 90 debtors should have analyzed the bases of every type of toxic tort that could be claimed against them and expanded the notice accordingly. A debtor, however, need not undertake "impracticable and extended searches . . . in the name of due process." *Mullane*, 339 U.S. at 317-18. This court finds no authority requiring a second search, and neither did the district court.

Instead, the district court used a foreseeability test—that Lyondell should have listed the three companies because it should have known of future benzene claims. In *Chemetron*, the Third Circuit rejected a foreseeability analysis in evaluating due process of bankruptcy notices. *Chemetron*, 72 F.3d at 347-48.

-10-

Between 1965 and 1972, the *Chemetron* defendant used depleted uranium at one of its facilities. *Id.* at 344. Part of that facility was demolished in 1972, with some rubble placed in a landfill the defendant owned. In 1975, the defendant sold both the facility and the landfill. After the sale but before bankruptcy, increased radiation levels were detected at the facility, and the defendant conducted "periodic clean-up efforts" at the facility and the landfill. *Id.* In 1988, the defendant filed a Chapter 11 bankruptcy. It provided actual and publication notice of its claim-bar date. *Id.* at 345.

Four years later, the plaintiffs—who lived or spent time around the landfill—sued. *Id.* They did not receive actual notice of the claim-bar date. *See id.* The bankruptcy court ruled that the plaintiffs were known creditors because the defendant "knew or should have known that it was *reasonably foreseeable* that it could suffer claims from individuals living near the" landfill. *Id.* at 347 (emphasis added).

The Third Circuit held that the bankruptcy court should have applied a "reasonably ascertainable" standard, not a "reasonably foreseeable" standard. *Id.*

> Debtors cannot be required to provide actual notice to anyone who potentially could have been affected by their actions; such a requirement would completely vitiate the important goal of prompt and effectual administration and settlement of debtors' estates.
>
> . . . .
>
> Where a debtor has sought the protection of bankruptcy law . . . procedural protections such as the bar claims date apply. These provisions cannot be circumvented by forcing debtors to anticipate speculative suits based on lengthy chains of causation.

*Id.* at 348. Under a "reasonably ascertainable" standard, the court found that the plaintiffs were unknown, so publication notice satisfied due process. *Id.* at 348-49. This court agrees with the Third Circuit and rejects the foreseeability approach the district court used here.

Besides foreseeability, the district court did not provide a reason why Lyondell had to go beyond the Federal Rules of Bankruptcy Procedure. Under the circumstances, Lyondell's notice satisfied due process. *See Mullane*, 339 U.S. at 314; *Chemetron*, 72 F.3d at 348-49; *Placid*, 753 F.3d at 158. A "[c]ritical feature[] of every bankruptcy proceeding [includes] . . . the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts." *Central Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 363-64 (2006).

Dahlin's claim arose before the confirmation of Lyondell's bankruptcy plan. No proof of claim was filed. This lawsuit was discharged in bankruptcy. *See Sanchez*, 659 F.3d at 675; **11 U.S.C. § 1141(d)(1)(A)**. This court need not address the other issues that Dahlin briefs or the cross-appeal.

*******

The judgment is vacated and the case remanded for proceedings consistent with this opinion.

_____